FILED
IN OPEN COURT
OCT 21 2025
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

UNITED STATES OF AMERICA

v.

JOSE FRANCISCO MENDOZA GOMEZ,
a/k/a, "Braulio Jelipe,"

*Defendant.*

No. 1:17-cr-147

**STATEMENT OF FACTS**

The United States and the defendant, JOSE FRANCISCO MENDOZA GOMEZ (hereinafter, "the defendant"), agree that the following facts are true and correct and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in or around 2016 and continuing until on or about October 17, 2019, the exact dates being unknown, within the jurisdiction of this Court, the defendant, JOSE FRANCISCO MENDOZA GOMEZ, a/k/a, "Braulio Jelipe," being first brought to the Eastern District of Virginia, knowingly and intentionally combined, conspired, confederated, and agreed with others both known and unknown, to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that it would be imported into the United States in violation of Title 21, United States Code, Sections 959(a) and 963.

2. During the course and in furtherance of the offense, the defendant personally distributed, or it was reasonably foreseeable to the defendant that his co-conspirators distributed 450 kilograms or more of cocaine (Base Level 38).

3. The defendant is a Mexican national who has been involved in the illegal distribution of narcotics into the United States for years. In the early/mid 2010s, Marisela Flores-Torruco enlisted the defendant to coordinate cocaine shipments for her and her DTO. In the 2016–2017 time period, the defendant was associated with a Mexico-based drug trafficking organization with ties to Colombia and Central America led by Flores-Torruco (hereafter, the "DTO"). The DTO directly trafficked cocaine, or caused cocaine to be trafficked, into Mexico with the ultimate goal of importing it into the United States, where its distribution would generate the highest profit. The DTO had operations in New York City, New York, Houston, Texas, and McAllen, Texas, among other United States-based locations, to assist in moving cocaine and drug proceeds throughout the United States.

4. The DTO, headed by Flores-Torruco, relied on Colombian sources of supply and other Central American drug traffickers for its cocaine inventory. The DTO provided logistical and financial support to coordinate the movement of multi-hundred kilogram quantities of South American cocaine, valued at millions of U.S. dollars, through Central America, Mexico, and ultimately into the United States. Individuals involved in or connected to the DTO included the defendant, Flores-Torruco, Qiyun Chen, Jose Padilla-Flores, Alfonso Padilla-Flores, Jesus Rauda-Avila, and other unindicted co-conspirators.

5. During the conspiracy, the defendant and his co-conspirators relied on various forms of communication, which included BlackBerry PIN-to-PIN communications. The defendant commonly and routinely used the screen name "Braulio Jelipe" on BlackBerry Messenger to communicate with his co-conspirators regarding the DTO's drug trafficking activities, which included: the movement, storage, and financing of shipments of cocaine; addressing competition from other traffickers; threats to their activities by potential informants;

and coordinating with corrupt public officials who assisted the DTO in its drug trafficking activities. These corrupt public officials were paid to provide intelligence to the DTO that assisted the DTO in avoiding law enforcement detection for their activities. Specifically, the defendant participated in planning and coordinating the movement of cocaine across the border between Mexico and the United States. The defendant also participated in the money laundering aspects of the DTO to move bulk drug proceeds out of the United States.

6. On or about April 21, 2017, approximately 971 kilograms of cocaine were seized in Panama. The 971 kilograms of cocaine originated from the DTO's Colombian source of supply. Flores-Torruco was in frequent contact with the Colombian source of supply around the time of the seizure.

7. On or about May 3, 2017, the defendant received approximately $600,000 in drug proceeds from an associate which he in turn transferred to another associate.

8. On or about May 6, 2017, the DTO transferred approximately $450,000 in drug proceeds to the Colombian source of supply. The purpose of the payment was to cover a debt owed to the source of supply and to secure the DTO's possession of approximately 500 kilograms of cocaine to be distributed into the United States.

9. On or about May 10, 2017, approximately 500 kilograms of cocaine were seized in Panama. The 500 kilograms of cocaine originated from the DTO's Colombian source of supply. The DTO had purchased approximately 400 kilograms of the 500-kilogram seizure and planned to distribute the 400 kilograms into the United States.

10. On or about May 16, 2017, the defendant received approximately $300,000 in drug proceeds from an associate.

11. On or about June 5, 2017, Flores-Torruco communicated to the defendant that she had approximately 500 kilograms of cocaine destined to travel along a route from at or near Veracruz, Mexico, to a location at or near Mexico City, Mexico. Veracruz is a Mexican port city used to import cocaine into Mexico. The defendant and Flores-Torruco discussed discounting the price for the 500 kilograms of cocaine.

12. Between in or around April and May of 2017, Flores-Torruco communicated with the defendant and Alfonso Padilla-Flores about planning a kidnapping targeting the family of a rival drug trafficker who stole 250 kilograms of cocaine from the DTO. The DTO paid a Mexican military official to listen in on phone conversations placed by the rival drug trafficker. Flores-Torruco asked the defendant to perform certain tasks regarding the planned kidnapping, including sending others to surveil areas where the kidnapping targets may be.

13. Through 2016 to at least June 2017, the DTO conspired to distributed at least 1,900 kilograms of cocaine with the knowledge that it would ultimately be imported into the United States.

14. On or about August 12, 2025, the defendant was expelled from Mexico and was first brought to Washington Dulles International Airport, located within the Eastern District of Virginia, where he was subsequently arrested by the Drug Enforcement Administration. His co-defendant and joint offender, Flores-Torruco, was previously first brought to and arrested in the Eastern District of Virginia. The defendant agrees that venue is proper in the Eastern District of Virginia pursuant to 18 U.S.C. § 3238.

15. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of

all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

16. This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether it is presented to or accepted by a court. The defendant waives any rights that he may have under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: 10/20/25 By: ______________________________

Christopher M. Carter
Special Assistant United States Attorney (LT)
Edgardo J. Rodriguez
Assistant United States Attorney
Caylee E. Campbell
Trial Attorney
Money Laundering and Asset Recovery Section
Department of Justice

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JOSE FRANCISCO MENDOZA GOMEZ, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

JOSE FRANCISCO MENDOZA GOMEZ

I am Manuel E. Leiva, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

MANUEL E. LEIVA
Attorney for the Defendant